UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WESLEY W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00401-MJD-SEB |
| | ) |
| MARTIN O'MALLEY,[2] Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Wesley W. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in February 2021, alleging an onset of disability as of November 4, 2020. [Dkt. 13-5 at 5.] Claimant's application was denied initially and again upon

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

reconsideration, and a hearing was held before Administrative Law Judge Gladys Whitfield ("ALJ") on March 22, 2022.  [Dkt. 13-2 at 210.]  On June 16, 2022, ALJ Whitfield issued her determination that Claimant was not disabled.  *Id.* at 17.  The Appeals Council then denied Claimant's request for review on January 5, 2023. *Id.* at 2.  Claimant timely filed his Complaint on March 7, 2023, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis:  (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520.  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)

(citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).  If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence."  *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).  While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions."  *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).  Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).  This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled.  *Id.*

### III.  ALJ Decision

ALJ Whitfield first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of November 4, 2020.  [Dkt. 13-2 at 20.]  At step two, the ALJ found that Claimant had the following severe impairments:  "hypertension; COPD; coronary artery disease; dyspnea secondary to interstitial lung disease; mild emphysema secondary to old granulomatous disease; lung nodules; degenerative disc disease of the thoracic spine; cervical spine arthritis and spondylosis; neuropathy; depression; anxiety disorder."  *Id.*  At step three, the

ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 22. ALJ Whitfield then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC") for

> light work as defined in 20 CFR 404.1567(b) except that he: can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; can occasionally climb ramps or stairs, balance, and stoop; should have no more than frequent reaching forward and to the side; should have no more than frequent reaching overhead, handling, fingering, and feeling; should avoid more than occasional exposure to extremes of cold and heat, humidity, environmental irritants such as fumes, odors, dusts, and gases, and poorly ventilated areas; should avoid all use of hazardous moving machinery and exposure to unprotected heights; should have no job where driving or operating a motorized vehicle is required to perform the functions of the job. He is limited to: work that can be learned in 30 days or less; simple, routine, repetitive tasks, that is short cycle work, where the same routine tasks are performed over and over according to set procedures, sequence, or pace; no tandem tasks or team work; no fast-paced production requirements; no more than occasional, brief interaction with co-workers, supervisors, and the general public; no direct interaction with the general public to perform the essential functions of the job; no more than occasional routine workplace changes. He can tolerate normal supervisory interactions including for example performance appraisals, corrections, instructions, and directives as necessary. He can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work. He is further limited to no strobe or flashing lights in the ordinary course of business, no rapid or jerking neck movements, and no complex or detailed work.

*Id.* at 26-27.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id*. at 36. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 37. Accordingly, ALJ Whitfield concluded Claimant was not disabled. *Id.* at 39.

### IV.  Discussion

Claimant raises two issues in his brief, both of which are addressed, in turn, below.

**A.  ALJ's Consideration of Claimant's Headaches**

Claimant testified as follows at the hearing with regard to his headaches:

Q:  What's the issue with your neck?

A:  Severe pain.  Just movement, up and down, side to side.

Q:  And is there anything in particular that helps?

A: No, ma'am.

Q:  Is there anything in particular that makes it worse?

A:  The way I sleep or something could make it worse.  Other than that, it's just a constant pain, irritation, headaches from it.

Q:  And how often are you having headaches?

A:  It's a daily thing.  I take ibuprofen for my headaches which eases it, but they don't go away.

Q:  And once the headache comes on, how long does it last?

A:  Several hours.  It doesn't actually go away.  Just, it's constant pain.  I don't know if that's from my neck or—some are worse than others.  I guess some are almost migraine-ish, but there's days that they're not as bad as that.

[Dkt. 13-2 at 221-22] (cleaned up).  In her decision, the ALJ recognized that Claimant experienced headaches, but found them to be a non-severe impairment.  Her explanation for that finding is as follows:

> As to the claimant's headaches, he presented to the emergency department in November 2020 with a headaches [sic] for longer than two weeks.  He had a negative CT head scan and his blood pressure was significantly elevated so it was likely causing his headache (Ex. 1F/13-24).  He endorsed a headache at the emergency department in December 2020 but his blood pressure was again significantly elevated (Ex. 2F/50-57).  At a primary care visit in January 2021, he endorsed a headache that had been persistent since the onset of his nausea and

> vomiting. An MRI of the brain was ordered (Exs. 3F/8-9; 6F/34-39). The MRI showed a normal brain in appearance for his age and only trace punctate foci of nonspecific gliosis in the cerebral white matter (Ex. 6F/41-42). He complained of occipital headaches at an orthopedic evaluation in February 2021 but no treatment was specifically recommended for the headaches (Ex. 5F/6-9). In March 2021, he complained of headaches and dizziness to his primary care provider but his blood pressure was elevated at 151/104 and he had run out of his blood pressure medication. No treatment was specifically recommended for the headaches (Ex. 6F/56-60). In a headache questionnaire dated June 30, 2021, he did not list any current headache medication (Ex. 5E). At the hearing in March 2022, he reported only taking Ibuprofen (Testimony). Therefore, the undersigned finds that the claimant's headaches do not have more than a minimal limitation on the claimant's ability to perform basic work functions and are thus not severe.

[Dkt. 13-2 at 21.]

Claimant argues that the ALJ's analysis with regard to his headaches is erroneous because the ALJ failed to recognize the medical evidence that suggests that Claimant's headaches could be cervicogenic in nature—that is, that they could be a symptom of his severe impairment of cervical spine arthritis and spondylosis. Claimant points to the result of the January 2021 brain MRI discussed by the ALJ. [Dkt. 13-7 at 307.] As the ALJ stated, the findings from that MRI noted that Claimant's brain was essentially normal for his age. However, those findings also noted:

> Moderate degenerative changes of the cervical spine partially imaged on localizer sequence with areas of moderate to high-grade canal stenosis suggested. Correlate for cervicogenic headache. Cervical spine MRI may be considered for further evaluation.

*Id.* The ALJ did not specifically acknowledge this finding in her step two analysis, although elsewhere in her decision she acknowledged the first quoted sentence. *See id.* at 31.

6

This would not have been error[3]—or it might have been harmless error[4]—had the ALJ properly considered the subjective symptom of Claimant's headaches when arriving at her RFC determination. This is because, as Claimant acknowledges, cervicogenic headaches are secondary headaches, and the Commissioner

> will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs [medical determinable impairments] because secondary headaches are symptoms of another underlying medical condition. We evaluate the underlying medical condition as the MDI. Generally, successful treatment of the underlying condition will alleviate the secondary headaches.

SSR 19-4p, 2019 WL 4169635, at *5. In other words, if Claimant's headaches are cervicogenic headaches, they were properly considered as one of the symptoms caused by Claimant's neck impairment, which the ALJ acknowledged as severe.

When making an RFC determination, the ALJ "will assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. 404.1545(a)(3). As is required by 20 C.F.R. § 404.1529, the ALJ must utilize a two-step test to evaluate a claimant's subjective symptoms, beginning by evaluating whether the claimant has a

---

[3] The Court notes that the phrase "correlate for cervicogenic headache" in the MRI report does not equate to a diagnosis of cervicogenic headaches; rather, it means that the MRI would support a diagnosis of cervicogenic headaches if his clinical symptoms also were consistent with that diagnosis.

[4] If some or all of Claimant's headaches were properly considered to be an impairment of their own, any error in finding them to be non-severe would have been harmless if the ALJ had properly considered their effects in arriving at her RFC determination, because the determination that an impairment is non-severe does not preclude the ALJ from evaluating the practical implications of that impairment. *Jeremy L. J. v. Saul*, 2020 WL 1033795, at *5 (S.D. Ind. Feb. 14, 2020). "Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (citing *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)). This is because "[e]ither way, the ALJ must later consider the limitations imposed by all impairments, severe and non-severe." *Id.* (citing 20 C.F.R. § 404.1523; *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)).

medically determinable impairment. 20 C.F.R. § 404.1529(b)-(c); SSR 16-3p, 2017 WL 5180304, at *4. For an impairment to be medically determinable, medical signs and laboratory findings must show the existence of the impairment and that impairment must reasonably be expected to produce the symptom(s) alleged. SSR 16-3p, 2017 WL 5180304, at *3.

If the ALJ concludes that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, she must then evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's work capacity. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *4-5. In making such an evaluation, the ALJ must consider several factors, including (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 16-3p, 2017 WL 5180304, at *7-8. This symptom-based analysis requires the ALJ to evaluate statements made by the claimant regarding those symptoms. SSR 16-3p, 2017 WL 5180304, at *6. However, the ALJ is also required to determine whether those statements made by the claimant are consistent with the medical signs and laboratory findings in the record. *Id.* at *5.

Here, the ALJ recognized Claimant's headaches as one of his symptoms. She then concluded the following:

8

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the medical evidence of record, which reflects a routine and conservative treatment history, and generally benign physical and mental health examinations.

[Dkt. 13-2 at 28.]  The ALJ then summarized the medical evidence of record, which included evidence relating to Claimant's complaints of headaches and the January 2021 MRI, as well as the medical opinions of record.  Nowhere does the ALJ explain **why** she believes the exam findings to be "generally benign"; nor does she explain how Claimant's subjective symptoms are "inconsistent with the medical evidence of record," other than her conclusory statement about "routine and conservative treatment history."

An ALJ "must competently explain an adverse credibility finding with specific reasons 'supported by the record,'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  In this case, the ALJ wholly failed to fulfill her duty to provide a reasoned explanation for her subjective symptom evaluation, which includes her implicit rejection of Claimant's testimony regarding his daily headaches.  This requires remand.

In his brief, the Commissioner argues that Claimant "is unable to cite to any record evidence that contradicts the ALJ's decision" and that

> beyond his own subjective allegations and general references to his sympto-matology, [Claimant] fails to direct this Court to evidence establishing his inability to work on a full-time basis. [Claimant], likewise, fails to demonstrate

9

the presence of actual documented functional limitations that significantly limited his ability to work that the ALJ failed to consider and incorporate. Significantly, none of [Claimant's] treatment providers offered an opinion as to his RFC.

[Dkt. 17 at 8.] But that does not excuse the ALJ from adequately explaining why she rejected Claimant's testimony about his subjective symptoms. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("As the Commissioner points out, no doctor has opined that Hill has more limitations than the ALJ incorporated into her assessment of Hill's residual functional capacity. But Hill *testified* that she is more limited, and her testimony cannot be disregarded simply because it is not corroborated by objective medical evidence.") (emphasis in original) (citing *Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin,* 739 F.3d 1046, 1049-50 (7th Cir. 2014); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006)). An ALJ may not gesture vaguely at a summary of the evidence—no matter how thorough—as the reason for rejecting a claimant's subjective symptoms allegations. Remand is required for the ALJ to correct this error.

### B. ALJ's Treatment of State Agency Psychologist's Opinion

The ALJ found that Claimant had two severe mental impairments: depression and anxiety disorder. In her RFC, the ALJ included the following limitations to account for those impairments:

> [Claimant] is limited to: work that can be learned in 30 days or less; simple, routine, repetitive tasks, that is short cycle work, where the same routine tasks are performed over and over according to set procedures, sequence, or pace no tandem tasks or team work; no fast-paced production requirements; no more than occasional, brief interaction with co-workers, supervisors, and the general public; no direct interaction with the general public to perform the essential functions of the job; no more than occasional routine workplace changes. He can tolerate normal supervisory interactions including for example performance appraisals, corrections, instructions, and directives as necessary. He can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with simple, routine, repetitive work. He is further limited to . . . no complex or detailed work.

[Dkt. 13-2 at 26-27.]

The record contains the opinion of state agency psychologist J. Gange, Ph.D. In the checkbox portion of the form he completed, Dr. Gange found that Claimant had moderate limitations in the ability to maintain attention and concentration for extended periods and the ability to set realistic goals or make plans independently of others. [Dkt. 13-3 at 15.] In the narrative portion of the form, Dr. Gange stated:

> The evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work related tasks.

*Id.* at 16. To be sure, this statement from Dr. Gange is not a model of clarity. As Claimant notes, it is not clear why Claimant would be limited to superficial interactions with coworkers and supervisors but have no such limitation with regard to members of the public, although this issue is moot given the ALJ's limitations with regard to interaction with the public.[5] More importantly, it is not at all clear what Dr. Gange meant by Claimant "can attend to tasks for a sufficient period to complete tasks"; nor is it clear how that is consistent with a moderate limitation in the ability to maintain attention and concentration for extended periods.[6]

With regard to her mental RFC determination, the ALJ stated the following:

---

[5] Indeed, it is not clear why Dr. Gange included these social limitations at all when he found no social interaction limitations in the checkbox portion of the form.

[6] Claimant argues that Dr. Gange also failed to address Claimant's limitations in setting realistic goals or making plans independently of others in his narrative statement. However, that limitation relates to the ability to perform semiskilled and skilled work. *See* SSA Program Operations Manual System DI 25020.010(B)(4), *available at* https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last visited Feb. 8, 2024). Inasmuch as the ALJ limited Claimant to unskilled work, there is no reversible error with regard to that aspect of the decision.

11

> At the request of Disability Determination Services (DDS), the claimant's records were reviewed by J. Gange, Ph.D., on August 26, 2021, when the claim was at the reconsideration level. Dr. Gange found severe mental impairments and opined that the claimant has no limitation in understanding, remembering, or applying information, no limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself (Ex. 3A). This assessment is supported by citations to relevant evidence showing generally benign mental status exams and self-reported capacity for various activities of daily living (Ex. 3A/8). This opinion is not very consistent with any evidence received at the hearing level. There are no treatment notes or any consultative examinations from the hearing level. The claimant also testified that he is not currently receiving any mental health treatment including medications. However, the claimant did note that his pain affects his focus and concentration and that it also makes him more irritable (Testimony). In considering the claimant's pain along with his mental impairments as well as the longitudinal record including the findings from the consultative psychological examination at Exhibit 12F, the undersigned finds that the claimant has a mild limitation in interacting with others. Therefore, Dr. Gange's opinion is mostly persuasive.

[Dkt. 13-2 at 35.] Although it is not entirely clear, the Court interprets this to mean that the ALJ accepts Dr. Gange's opinion as persuasive except that she finds an additional limitation—a mild limitation in interacting with others. Assuming this interpretation is correct,[7] the Court agrees with Claimant that the ALJ failed to explain how she interpreted the unclear portions of Dr. Gange's opinion discussed above.[8] The ALJ further failed to explain how her RFC incorporates each of the limitations found by Dr. Gange and why she determined that the limitations set forth

---

[7] If this interpretation is not correct, then the ALJ erred in failing to explain her conclusion regarding which portions of Dr. Gange's opinion were and were not persuasive.

[8] Given this lack of clarity in Dr. Gange's narrative opinion, the Commissioner's citation to *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002), is misplaced. In *Johansen*, the Seventh Circuit found that the narrative explanation properly captured the checkbox limitations and that the ALJ's RFC properly captured the claimant's limitations. *See Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014) (explaining, and distinguishing, holding of *Johansen*). The Court cannot make such a finding here because it is not clear what Dr. Gange meant in his narrative. It was therefore incumbent on the ALJ to explain how she determined that her RFC encompassed Claimant's moderate limitation in the ability to maintain attention and concentration for extended periods.

12

in the RFC would accommodate the effect of pain on Claimant's focus and concentration, which the ALJ seemed to accept was a problem for Claimant.[9] On remand, the ALJ shall provide a complete explanation for her mental RFC determination, correcting the deficiencies noted above.

### V.  Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  14 FEB 2024

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.

---

[9] Given this relationship between Claimant's pain and his ability to concentrate, the Court notes that the ALJ's mental RFC determination will likely be affected by the ALJ's reconsideration of her subjective symptoms analysis on remand.